IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


CAROL JEAN MURPHY                        )
                                         )
v.                                       )        No. 3:13-0493
                                         )
CAROLYN W. COLVIN,                       )
        Acting Commissioner of           )
        Social Security                  )


To: The Honorable John T. Nixon, Senior District Judge


**REPORT AND RECOMMENDATION**

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g) and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) should be DENIED.

# I. INTRODUCTION

In September 2009, the plaintiff protectively filed applications for SSI and DIB, alleging a disability onset date of August 28, 2009, due to "[b]ack problems," diabetes, high blood pressure, and high cholesterol. (Tr. 9, 170-81, 193, 197.) Her applications were denied initially and upon reconsideration. (Tr. 79-80, 82-87.) The plaintiff appeared and testified at two hearings before Administrative Law Judge Brian Dougherty ("ALJ") held on December 9, 2011, and February 29, 2012. (Tr. 21-65.) On March 15, 2012, the ALJ entered an unfavorable decision. (Tr. 9-16.) On March 18, 2013, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

# II. BACKGROUND

The plaintiff was born on March 8, 1961 (tr. 193), and she was 48 years old as of her alleged disability onset date. She graduated high school and has worked as a supervisor at a call center, a cashier, a retail store manager, and a restaurant manager. (Tr. 24, 27, 207-17.)

## A. Chronological Background: Procedural Developments and Medical Records

### 1. Medical Evidence

In August 2007, Dr. Richard Berkman, a neurosurgeon, performed thoracic surgery at T8-T9 after discovering a "massive disk rupture." (Tr. 275-86.) Dr. Berkman observed in September 2007 that the plaintiff did "exceedingly well from the surgery" and had normal reflexes and neurologic condition and was "back walking with normal strength in her legs." (Tr. 272.) However, when the plaintiff returned in October 2007, she complained of "constant low back pain" without radiation

to her legs.[1]  (Tr. 271.)  In November 2007, Dr. Berkman reviewed a lumbar spine MRI that was normal except for mild disc degeneration at L5-S1, and he opined that surgical intervention was not necessary.  (Tr. 270.)

An April 2008 MRI showed "[b]road based central disk bulge at L5-S1 . . . and minimal broad based posterior disk bulge at L4-L5" with "[b]ilateral facet hypertrophy of the lower lumbar spine" but "[n]o disk herniation or significant disk bulge or other significant abnormality." (Tr. 422-23.)  The plaintiff returned to Dr. Berkman in May 2008, reporting that her back pain was worse while sitting, and, after examination, Dr. Berkman referred the plaintiff for facet block injections at L4-L5 and L5-S1.  (Tr. 268.)  In June and July 2008, the plaintiff received a series of three lumbar facet joint injections (tr. 263-65), but, on July 29, 2008, Dr. Berkman commented that the injections "did not work at all." (Tr. 267.)  He noted that her April 2008 MRI showed her disks to be "plump and well-hydrated," and he opined that he did not believe the "small bulge at L5-S1" was "the sole source of her pain and therefore . . . [did] not recommend surgery."  *Id.*  He referred her to pain management after concluding that he could not determine the source of her pain.  *Id.*

From approximately October 2008 until September 2011, the plaintiff was treated by Dr. Gary Cole for, *inter alia*, type II diabetes, mixed hyperlipidemia, benign essential hypertension, generalized osteoarthritis, obesity, chronic low back pain, foot pain, and knee pain.  (Tr. 287-333, 377-414.)  During this time the plaintiff's weight ranged from approximately 172 to 210 pounds, and Dr. Cole's treatment notes describe the plaintiff as ranging from moderately to morbidly obese.

---

[1] Dr. Berkman observed that the plaintiff had originally "presented to [him] with gait ataxia, progressively worsening leg weakness, and a thoracic disc rupture." (Tr. 271.)  He further noted that "[s]he ha[d] done great from her surgery, but her low back pain, which was her initial complaint, ha[d] not changed."  *Id.*

(Tr. 292, 305, 308, 314, 317, 322, 379, 389, 397, 404.) Dr. Cole prescribed Phentermine for weight loss and recommended diet and exercise. (Tr. 397.) Beginning in October 2008, the plaintiff presented with generalized osteoarthritis, which she said had first been diagnosed more than five years earlier. (Tr. 289.) She described her "discomfort [as] mildly uncomfortable" and reported that her "baseline quality of life, living with rheumatoid arthritis, [was] good." *Id.* Dr. Cole described her symptoms as "stable and nonprogressive" and prescribed Tylenol and Lortab. (Tr. 289, 302, 314-15, 377, 396, 402.) In January 2010, Dr. Cole diagnosed the plaintiff with chronic low back pain and somatic dysfunction of the lumbar region, prescribed Flexeril, and ordered a physical therapy evaluation. (Tr. 405.)

Dr. Cole also treated the plaintiff for mixed hyperlipidemia with Lopid, Vytorin, and Zocor, and he recommended a low cholesterol and low fat diet. (Tr. 289, 302, 305, 377, 382, 394.) He observed on various occasions that she was in compliance with treatment and that her lipids were "generally well-controlled." *Id.* The plaintiff denied experiencing hypercholesterolemia symptoms. *Id.* Dr. Cole diagnosed the plaintiff with "essential hypertension, benign," and treated her with a diuretic, a beta blocker, and aspirin along with a low sodium diet. (Tr. 289, 302, 377, 382, 394.) The plaintiff reported that she tolerated her medications without side effects and that her blood pressure was "well-controlled." *Id.* Dr. Cole observed that her "[c]ompliance with treatment has been good." *Id.*

Dr. Cole also treated the plaintiff for "type II, non-insulin requiring diabetes without complications." (Tr. 289.) He treated her with a hypoglycemic, daily aspirin, and lipid lowering agents and reported that her compliance with treatment was good. *Id.* The plaintiff frequently denied having diabetic symptoms. (Tr. 302, 377, 386, 394.) In February 2009, she suffered a

hypoglycemic episode of "severe intensity" with symptoms including "confusion and numb lips." (Tr. 306-10.)  In July 2010, Dr. Cole prescribed an insulin pen.  (Tr. 389.)  The plaintiff was apparently allergic to insulin, reporting that she experienced "visual disturbances," and stopped taking insulin.  (Tr. 379.)  Treatment notes from the Montgomery County Health Department in September 2011 show that the plaintiff's diabetes was uncontrolled, but the plaintiff reported that her blood sugar was high because she had "been out of [her] medication."  (Tr. 419-20.)  Those treatment notes also show diagnoses for hypertension, neuropathy, insulin intolerance, hypoglycemia, and hyperlipidemia.  (Tr. 416-20.)

In November 2010, the plaintiff presented to Dr. Cole with left knee pain, and he administered a Lidocaine and Marcaine injection.  (Tr. 382-85.)  In September 2011, she presented with left foot pain, primarily on the plantar surface.  (Tr. 377.)  The pain did not radiate, and the plaintiff reported that the "precipitating event was a fall."  *Id.*  Dr. Cole diagnosed her with foot pain but did not otherwise treat her foot, noting that she did not have insurance and was going to a health clinic the following day.  (Tr. 377-81.)  At that visit the plaintiff reported that she was compliant with her medications and not experiencing side effects.  (Tr. 377.)  She denied experiencing symptoms related to hypercholesterolemia or diabetes and said that, while osteoarthritis caused mild discomfort, her "baseline quality of life . . . [was] good."  *Id.*  Dr. Cole indicated that her lipids were well-controlled, and the plaintiff reported that her blood pressure was also well-controlled.  *Id.*

On November 24, 2009, Dr. Kanika Chaudhuri, a nonexamining Tennessee Disability Determination Services ("DDS") consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment.  (Tr. 334-42.)  Dr. Chaudhuri opined that the plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk about six hours

in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull in unlimited amounts. (Tr. 335.) Dr. Chaudhuri opined that the plaintiff's alleged impairments were "somewhat out of proportion with the objective findings." (Tr. 339.) On February 24, 2010, Dr. Reeta Misra, a nonexamining DDS consultative physician, "affirmed" Dr. Chaudhuri's RFC assessment. (Tr. 376.)

**B. Hearing Testimony**

The plaintiff's initial hearing was held on December 9, 2011, with a subsequent hearing on February 29, 2012. (Tr. 21-65.) The plaintiff was represented by counsel and testified at both hearings, and Dr. Kenneth Anchor, a vocational expert ("VE"), testified at the second hearing. *Id.*

At the first hearing, the plaintiff testified that she is 5'2" tall and weighs approximately 210 pounds. (Tr. 26.) She related that her teenage daughter, who is in college, lives with her. (Tr. 34.) The plaintiff said that she last worked as a supervisor at a call center but was "let go" in 2009. (Tr. 24, 27, 37-38.) She gave different reasons for why she was "let go," explaining variously that it was because she had worked there for five years, because of her age, and because she had not met a quota. (Tr. 37-38.) She said that she had also worked as a cashier and manager at Tractor Supply and as a restaurant manager. (Tr. 27.)

The plaintiff said that her hypertension was controlled on medication (tr. 32) but she described diabetes as "an everyday struggle." (Tr. 30.) She related that she has neuropathy in her feet, which has led her to use a cane because she cannot feel her feet. (Tr. 31, 43.) She testified that her legs swell on a daily basis and that she "put[s] [her] feet up" for relief, doing so "at least five times a day" for 15 to 20 minutes at a time. (Tr. 43-44.) She also related that she has "bulging

discs" and "two ruptured thoracics [*sic*] that have not been repaired." (Tr. 32.) She explained that she received a spinal block that did not help and injections made her pain worse. (Tr. 33.) She said that her pain medicine "put[s] [her] out" so she does not take it all the time but that she uses a TENS unit that makes her pain "manageable." *Id.* She explained that, if she "[has] to do something" such as go to the grocery store or doctor, she "cannot" take her medications but that if she has nothing to do she will take her medications. (Tr. 34.) She estimated that her daily pain level is an eight out of ten. (Tr. 42.) She said that she is in "constant pain" and that the "only thing" that relieves her pain is taking her medications and lying down. (Tr. 43.)

The plaintiff testified that it hurts to sit, stand, or walk. *Id.* She reported that she does not usually lift more than five pounds and can usually walk only 15 to 20 minutes before needing to sit. (Tr. 36-37.) She said that she cannot sweep and mop a room without having to stop because of pain in her lower back, explaining that the pain "feels like someone is sitting there with a knife in [her] lower back just twisting it." (Tr. 35.) She testified that she is able to "put a load of clothes in [her] washer" but that her daughter "has to do the rest," adding that her daughter helps her around the house by cleaning and going grocery shopping with her. (Tr. 35, 44-45.) She explained that her daughter "does everything" at the grocery store while she rides in a buggy. (Tr. 44.) The plaintiff also testified that her daughter "drives [her] everywhere," although she clarified that she can drive to her mother's house one mile away. (Tr. 35.) The plaintiff said that she "[does not] drive long distances" due to pain from sitting. *Id.*

A supplemental hearing was held on February 29, 2012, primarily for the purpose of obtaining VE testimony. (Tr. 52-65.) The plaintiff testified again, and she rated her pain level as a 10 when she is not taking pain medication. (Tr. 56.) She described her diabetes as "uncontrolled"

even though she takes medication. (Tr. 57.) She said that she has new symptoms related to her back problems, including "perfuse sweating" and "incontinence," although she acknowledged that she has not seen a doctor for these symptoms because she does not have insurance. (Tr. 57-58.) She testified that she can sit, stand, and walk about fifteen minutes each. (Tr. 59.)

The VE classified the plaintiff's past work as a restaurant manager as light and skilled and her past work as a telephone clerk as sedentary and semi-skilled. (Tr. 60.) As one of a series of hypothetical questions, the ALJ asked the VE whether a hypothetical person with the plaintiff's age, education, and work history would be able to find work if she could occasionally lift ten pounds and frequently lift five pounds, stand and walk for fifteen minutes at a time and up to two hours a day with the assistance of a cane, sit at least six hours a day, and occasionally perform postural activities, but never use ladders or be exposed to hazards. (Tr. 61.) The VE replied that such a person could perform the plaintiff's past relevant work as a telephone clerk. *Id.*

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on March 15, 2012. (Tr. 9-16.) Based upon the record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since August 28, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

                                        ***
3.    The claimant has the following severe impairments: obesity; type II diabetes mellitus with neuropathy; post-thoracic surgery; lumbago with central disc bulge at L5-S1 and lower back pain (20 CFR 404.1520(c) and 416.920(c)).

***

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and 5 pounds frequently; stand and walk 15 minutes at one time and up to 2 hours in an 8-hour day with a cane; sit for 6 hours in an 8-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders/ropes/scaffolds; and no exposure to any hazards.

***

6.     The claimant is capable of performing past relevant work as a telephone clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

***

7.     The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-16.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social

9

Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  The Commissioner's

decision must be affirmed if it is supported by substantial evidence, "even if there is substantial

evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc.*

*Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc.*

*Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).  Substantial evidence is defined as "more than a mere

scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229,

59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.

2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions

adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide

questions of credibility.  *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing

*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)).  The Court must accept the ALJ's

explicit findings and determination unless the record as a whole is without substantial evidence to

support the ALJ's determination.  42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health &*

*Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of

disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot*

*v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).  The original burden of establishing disability is on

the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory

diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d).

First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d),

416.920(d)). The plaintiff may establish that she meets or equals a listed impairment and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding

the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's claim at step four of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 11.) At step two, the ALJ determined that the plaintiff had the following severe impairments: "obesity; type II diabetes mellitus with neuropathy; post-thoracic surgery; lumbago with central disc bulge at L5-S1 and lower back pain." *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12.) At step four, the

ALJ determined that the plaintiff was capable of performing her past relevant work as a telephone clerk. (Tr. 15.)

**C. The Plaintiff's Assertions of Error**

The plaintiff argues that the ALJ erred by: (1) failing to properly consider all of her impairments and failing to provide sufficient reasons for finding that some impairments were not severe; (2) failing to include a function-by-function assessment; (3) improperly evaluating the credibility of her subjective complaints of pain; and (4) failing to properly consider her obesity. Docket Entry No. 12; at 6-11.

**1. The ALJ properly evaluated all of the plaintiff's impairments and provided sufficient reasons for finding that some of her impairments were not severe.**

The plaintiff argues that the ALJ erred at step two by "failing to properly consider" all of her impairments and by "failing to provide sufficient reasons" for finding that some of her impairments were not severe. Docket Entry No. 12, at 6-7. Specifically, the plaintiff points out that she was diagnosed with "hypertension; osteoarthritis; left heel spur; morbid obesity; pedal edema; severe spinal stenosis; cervical spondylosis; lumbar radiculopathy; gait ataxia; leg weakness; and thoracic spine disc ruptures," and she argues that the ALJ erred by failing to find that these were severe impairments and by failing to provide sufficient explanation for his decision.

The plaintiff bears the burden at step two of proving that she suffers from a severe impairment. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Regulations provide that an impairment is considered severe if that impairment "significantly limits your physical

or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). *See also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Regulations define basic work activities as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). The Sixth Circuit has construed the step two severity determination as a *de minimis* hurdle in the five-step sequential process, but it still effectively screens out "claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 89-90 (6th Cir. 1985) and citing *Murphy v. Sec'y of Health & Human Servs*., 801 F.2d 182, 185 (6th Cir. 1986)). An ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. Nov. 9, 2007) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). *See also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. Aug. 27, 2009).

The ALJ thoroughly evaluated the plaintiff's impairments at step two, finding that her severe impairments included "obesity; type II diabetes mellitus with neuropathy; post-thoracic surgery; lumbago with central disc bulge at L5-S1 and lower back pain." (Tr. 11.) In addition, the ALJ specifically evaluated the plaintiff's allegations of disability due to hypertension, hyperlipidemia, and osteoarthritis. (Tr. 12.) The ALJ found, however, that these impairments were either well-controlled or caused only mild symptoms, concluding that they were not severe because they did "not cause more than a minimal effect on the [plaintiff's] ability to perform basic work activities." *Id.*

15

The plaintiff argues that the ALJ erred by not specifically addressing each of a long list of impairments with which she contends she has been diagnosed. Docket Entry No. 12, at 6. Initially, the Court notes that the ALJ in fact addressed several of these alleged impairments both at step two and in the plaintiff's RFC. For example, the plaintiff argues that the ALJ failed to address her morbid obesity, hypertension, and osteoarthritis. *Id.* However, the ALJ clearly addressed each of these impairments, either by finding that they caused no more than minimal limitations, as in the case of hypertension and osteoarthritis, or by including limitations for the impairment in the plaintiff's RFC, as in the case of obesity and lower back pain. (Tr. 11-12, 14-15.)

The other alleged impairments consist of isolated diagnoses for which the plaintiff did not receive treatment or that predate the alleged disability onset date. In either case, there is no evidence that the alleged impairments cause current functional limitations. For example, the plaintiff cites October 22, 2008 treatment notes from Dr. Cole in which he lists pedal edema and left heel spur as "[c]urrent [p]roblems." Docket Entry No. 12, at 6; (tr. 289-91). However, Dr. Cole did not specifically treat these problems, and the plaintiff did not complain of any functional limitations resulting from them. (Tr. 289-91.) Similarly, the plaintiff contends that she was diagnosed with severe spinal stenosis, cervical spondylosis, gait ataxia, lumbar radiculopathy, leg weakness, and thoracic spine disc rupture. Docket Entry No. 12, at 6. However, each of these diagnoses was made prior to the plaintiff's thoracic surgery and, indeed, those conditions were the impetus for her surgery. (Tr. 271, 277, 279.) Following surgery, the plaintiff has not continued to receive treatment for these conditions and has failed to demonstrate functional limitations arising from them. To the extent that the plaintiff has continued to have back problems, these limitations are accounted for in the ALJ's finding that the plaintiff has the severe impairments of "post-thoracic surgery; lumbago

with central disc bulge at L5-S1 and lower back pain" and in his decision to include limitations attributed to these impairments in her RFC.

In sum, the record shows that the ALJ appropriately considered all of the plaintiff's alleged impairments. Although the plaintiff may have pointed out certain diagnoses that the ALJ did not specifically discuss, she has not demonstrated that these isolated diagnoses result in current functional limitations. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that a "mere diagnosis . . . says nothing about the severity of the condition."). The ALJ thoroughly reviewed the evidence of record and provided an appropriate analysis of each of the plaintiff's alleged impairments.

### 2. The ALJ properly performed a function-by-function assessment of the plaintiff's limitations and did not err in formulating her RFC.

The plaintiff argues that the ALJ failed to perform a function-by-function assessment of her limitations when determining her RFC as required by Social Security Ruling ("SSR") 96-8p. Docket Entry No. 12, at 7-8.

SSR 96-8p provides that an "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach function must be considered separately." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *3, 5. The Sixth Circuit has held that, "[a]lthough SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. Mar. 4, 2002) (internal citations and quotation marks omitted). Additionally, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a

detailed statement in writing" because there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). Consequently, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (internal citations and quotation marks omitted).

The Court's review shows that the ALJ appropriately considered all of the relevant evidence and appropriately explained his decision. The ALJ discussed in great detail the plaintiff's alleged limitations as well as her treatment history and each of the medical opinions in the record. (Tr. 12-15.) To the extent that the ALJ did not make a specific finding regarding every possible limitation to be gleaned from the record, the Court concludes that the ALJ comprehensively assessed the plaintiff's limitations and included only the limitations that he found supported by the record.

The plaintiff does not identify the specific limitations that she contends the ALJ failed to include except for pointing out that the ALJ did not address her ability to push or pull. Docket Entry No. 12, at 8. However, the plaintiff has not identified any evidence in the record supporting such a limitation. The ALJ's decision shows that he fully considered all of the relevant evidence in accordance with SSR 96-8p and appropriately explained his decision to include or not include certain limitations in the plaintiff's RFC.

### 3. The ALJ properly evaluated the plaintiff's credibility.

The plaintiff argues that the ALJ erred in evaluating her credibility. Docket Entry No. 12, at 8-10.

An ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit, in *Duncan v. Secretary of Health and Human Services*, 801 F.2d

847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[2] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ satisfied the first prong of the *Duncan* test when he concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. (Tr. 13.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 404.1529(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical

---

[2] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire

case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).[3]

After discussing the evidence of record in significant detail, the ALJ discussed the plaintiff's

credibility as follows:

> The claimant testified that her pain level on an average day is 10 out of 10. She
> testified that she can stand for 15 minutes at one time, walk for 15 minutes at one
> time, and lift about 5 pounds. She also testified that she is unable to sit a full day,
> must lie down to rest frequently, and suffers from daily incontinence as a side effect
> of her back problems. I find the claimant to be generally credible with regard to the
> lifting and standing limitations to which she testified. However, the treatment
> records do not support her allegations that she is unable to sit a full day and that she
> needs to lie down. Nowhere in the treatment notes does the claimant report
> significant limitations with sitting, nor does she report a need to intermittently lie
> down. Further, her alleged incontinence does not appear to be documented in any
> treatment notes included in the evidence of record. Therefore, this portion of the
> claimant's testimony is found to be not credible.

(Tr. 14-15.)

As demonstrated above, the ALJ set forth a detailed analysis evaluating several of the factors

in 20 C.F.R. § 405.1529(c)(3) and concluding that the plaintiff's subjective complaints of pain are

not disabling. (Tr. 13-15.) Although the plaintiff essentially contends that the ALJ's credibility

finding is "conclusory" and "boilerplate" (Docket Entry No. 12, at 9-10), that is clearly not the case.

The ALJ addressed, *inter alia*, the location, duration, frequency, and intensity of her symptoms; the

effectiveness of medication; and the medical treatment that she received. *Id.* The ALJ also analyzed

---

[3] The seven factors include: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms; (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on her back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

with specificity which portions of the plaintiff's testimony that he found credible and which portions he did not. The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, Social Security Ruling 96-7p, and 20 C.F.R. § 404.1529.

### 4. The ALJ properly evaluated the plaintiff's obesity.

The plaintiff argues that the ALJ did not properly consider her obesity when determining her RFC. Docket Entry No. 12, at 11-12.

SSR 02-01p, which details the SSA's policy on obesity, provides that, even though the SSA no longer classifies obesity as a listed impairment, adjudicators must still consider its effects when evaluating an individual's RFC. Soc. Sec. Rul. 02-01p, 2002 WL 34686281, at *1. Accordingly, SSR 02-01p provides that:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* at *6.

The Sixth Circuit has found that SSR 02-01p does not offer "any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010) (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. Jan. 31, 2006)). Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* (quoting *Bledsoe*, 165 Fed. Appx. at 412). However, obesity should be evaluated on a case-by-case basis because it "*may or may not* increase

the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-01p, 2002 WL 34686281, at *6 (emphasis added). An ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of her obesity. *See Coldiron*, 391 Fed. Appx. at 443. The Sixth Circuit has also held that an "ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe*, 165 Fed. Appx. at 412 (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)).

The plaintiff testified that she is 5'2" tall and weighs 210 pounds, and Dr. Cole routinely found that the plaintiff's weight fell between moderate and morbid obesity. (Tr. 26, 289-333, 377-414.) Citing the plaintiff's medical records, the ALJ noted that she is "62" tall and weighs approximately 206 pounds," which the ALJ found translated to a Body Mass Index ("BMI") of 37.7. (Tr. 14.) The ALJ included obesity as a severe impairment (tr. 11) and evaluated the plaintiff's obesity in the context of her RFC assessment. (Tr. 14.) The ALJ found that the "plaintiff's ability to perform routine movement and necessary physical activity within the work environment was impaired by her extreme obesity" and noted that he had included limitations in the plaintiff's RFC based on her obesity. *Id.* The ALJ's decision demonstrates that he appropriately considered the plaintiff's obesity and the extent to which her obesity, in combination with other impairments, limits her overall functional ability.

## V. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 11) be DENIED and the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge